O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JESSICA S. DURAN-PALMER,** | ) | NO. CV 10-7046 MAN |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION |
| **MICHAEL J. ASTRUE,** | ) ) | AND ORDER |
| **Commissioner of Social Security,** | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

  Plaintiff filed a Complaint on September 21, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On October 21, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on July 5, 2011 in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, remanding the matter for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under

submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability and DIB on January 25, 2008.[1] (Administrative Record ("A.R.") 20, 122, 128.)[2] Plaintiff, who was born on September 17, 1980 (A.R. 122),[3] claims to have been disabled since July 13, 2006, due to: a learning disability; right eye blindness; left knee and ankle injuries; fibromyalgia; lupus; bronchitis/asthma; restless leg syndrome; rapid heartbeat; acid reflux; surgery/right eye; and closure of the esophagus. (A.R. 71, 75). Plaintiff has past relevant work experience as a tax preparer, hotel manager/assistant manager, executive chef, and fast food cook. (A.R. 27.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 71-79), plaintiff requested a hearing (A.R. 80-81). On July 29, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Michael D. Radensky (the "ALJ"). (A.R. 31-68.) At the hearing,

---

[1] The record indicates that plaintiff's application for DIB was filed on January 25, 2008. (A.R. 122, 128.) However, in his decision, the ALJ states that "[o]n January 11, 2008, [plaintiff] filed a Title II application for a period of disability and disability insurance benefits." (A.R. 20.)

[2] Plaintiff also filed an application for supplemental security income on January 25, 2008. (A.R. 122-27.)

[3] On the date plaintiff filed her application for DIB, plaintiff was 27 years old, which is defined as a "younger individual." (A.R. 128; 20 C.F.R. § 404.1563.)

submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability and DIB on January 25, 2008.[1] (Administrative Record ("A.R.") 20, 122, 128.)[2] Plaintiff, who was born on September 17, 1980 (A.R. 122),[3] claims to have been disabled since July 13, 2006, due to: a learning disability; right eye blindness; left knee and ankle injuries; fibromyalgia; lupus; bronchitis/asthma; restless leg syndrome; rapid heartbeat; acid reflux; surgery/right eye; and closure of the esophagus. (A.R. 71, 75). Plaintiff has past relevant work experience as a tax preparer, hotel manager/assistant manager, executive chef, and fast food cook. (A.R. 27.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 71-79), plaintiff requested a hearing (A.R. 80-81). On July 29, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Michael D. Radensky (the "ALJ"). (A.R. 31-68.) At the hearing,

---

[1] The record indicates that plaintiff's application for DIB was filed on January 25, 2008. (A.R. 122, 128.) However, in his decision, the ALJ states that "[o]n January 11, 2008, [plaintiff] filed a Title II application for a period of disability and disability insurance benefits." (A.R. 20.)

[2] Plaintiff also filed an application for supplemental security income on January 25, 2008. (A.R. 122-27.)

[3] On the date plaintiff filed her application for DIB, plaintiff was 27 years old, which is defined as a "younger individual." (A.R. 128; 20 C.F.R. § 404.1563.)

testimony was given by medical expert Dr. Samuel Landau, M.D. (A.R. 39-44), and vocational expert Corinne J. Porter (A.R. 60-66). On November 23, 2009, the ALJ denied plaintiff's claim (A.R. 20-28), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 5-7). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since July 13, 2006, the alleged onset date of plaintiff's disability.[4] (A.R. 22.) The ALJ determined that plaintiff has the following severe impairments: fibromyalgia; obesity treated with gastric bypass surgery; possible amblyopia OD; chronic sprain of the right knee and ankle; and possible asthma.[5] (*Id.*) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 23.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "the full range of light work as defined in 20 C.F.R. § 404.1467(b)," with the following exceptions:

---

[4] The ALJ found that "[plaintiff] worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity." (A.R. 22.)

[5] The ALJ determined that "because [plaintiff's] medically determinable mental impairment causes no more than 'mild' limitation," plaintiff's learning disorder is non-severe. (A.R. 23.)

3

> [S]it eight hours in an eight-hour workday; stand/walk one hour in an eight-hour workday in ten to fifteen minute increments and use a cane or crutches as needed; climb stairs rarely, no ladders, work at heights or balancing; work should be air conditioned and free of excessive pollutants; and no binocular vision.

(A.R. 24.)

The ALJ concluded that plaintiff was capable of performing her past relevant work as a tax preparer. (A.R. 27.) The ALJ made this determination based on Ms. Porter's response to "a hypothetical question based on an individual with the claimant's age, education, and past work experience, with a residual functional capacity to full range of light work as defined in 20 C.F.R. § 404.1567(b)," and with the ALJ's listed exceptions. (*Id.*) Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act from July 13, 2006, the alleged disability onset date, through the date of his decision. (A.R. 20, 28.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than

a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ improperly evaluated the medical evidence in determining that plaintiff did not meet or equal Listing 1.02A of the Listing of Impairments; and (2) the ALJ improperly rejected plaintiff's excess pain testimony. (Joint Stipulation ("Joint Stip.") at 5, 14.)

**I.  The ALJ's Reasons For Rejecting Plaintiff's Credibility Are Neither Clear Nor Convincing.**

Plaintiff contends that the ALJ failed to give "clear and convincing reasons for rejecting [her] pain and limitation testimony." (Joint Stip. at 19.) As discussed below, the ALJ erred in his rejection of plaintiff's subjective pain testimony by failing to give clear and convincing reasons for his rejection of that testimony, particularly in light of plaintiff's fibromyalgia diagnosis.

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Burnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(*en banc*); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins

v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit has noted, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)(citations omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 26.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

The ALJ does not dispute that plaintiff has demonstrated objective evidence of severe physical impairments. However, the ALJ found that plaintiff's subjective testimony regarding "the intensity, persistence and limiting effects" of her symptoms was not credible. (A.R. 26.) The ALJ provided five purportedly "clear and convincing reasons for rejecting [plaintiff's] allegations of disabling pain, symptoms, and limitations." (*Id.*) The ALJ stated that:

> <u>First</u>, the objective medical evidence of record does not support impairments likely to produce disabling pain or limitation. <u>Second</u>, there is no evidence [plaintiff] underwent regular treatment employing a regimen or therapy consistent with the alleged severity of her complaints for any period of twelve or more continuous months, which could reasonably be expected from one suffering unrelenting pain, debilitating symptoms, and severe functional limitations such as those alleged by [plaintiff]. <u>Third</u>, [plaintiff] has not taken medications consistent with complaints of disabling pain or limitation for any period of twelve continuous months. . . . <u>Fourth</u>, [plaintiff] did not allege an inability to provide her own care. <u>Fifth</u>, [plaintiff] testified she is on the computer a lot, watches a lot of television, is able to cook, and goes to the market with her mother.

(A.R. 26-27.) These reasons, while specific, do not constitute clear and convincing reasons based on substantial evidence as required.
///
///

1    The ALJ's first ground for finding plaintiff to be not credible
2 cannot, by itself, constitute a clear and convincing reason for
3 discrediting plaintiff. The failure of the objective medical record to
4 corroborate fully plaintiff's subjective symptom testimony is not, by
5 itself, a legally sufficient basis for rejecting such testimony.
6 Rollins, 261 F.3d at 856; Burnell, 947 F.2d at 347 (noting that "[i]f an
7 adjudicator could reject a claim of disability simply because
8 [plaintiff] fails to produce evidence supporting the severity of the
9 pain there would be no reason for an adjudicator to consider anything
10 other than medical findings"). Moreover, the lack of objective medical
11 evidence is consistent with the nature and symptoms of fibromyalgia --
12 an impairment which, as discussed in detail *infra*, the ALJ does not
13 appear to have considered in evaluating plaintiff's allegations of
14 disabling pain, symptoms, and limitations. Benecke v. Barnhart, 379
15 F.3d 587, 594 (9th Cir. 2004)(stating that fibromyalgia "is diagnosed
16 entirely on the basis of patients' reports of pain and other symptoms").
17 Accordingly, the ALJ's determination that "the objective medical
18 evidence of record does not support impairments likely to produce
19 disabling pain or limitation" does not, by itself, constitute a clear
20 and convincing reason for discrediting plaintiff's testimony. *See*
21 Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotton v. Bowen,
22 799 F.2d 1403, 1407 (9th Cir. 1986); *see also* Burch, 400 F.3d at 681.

24    The ALJ's second ground for discrediting plaintiff is also not
25 clear and convincing, because the ALJ has not specified how plaintiff's
26 many visits to Dr. Sukay and Dr. Yu, both treating physicians, do not
27 constitute "regular treatment employing a regimen or therapy consistent
28 with the alleged severity of her complaints." After her knee injury in

9

2006, plaintiff made monthly visits to treating physicians Dr. Yu and Dr. Sukay over a period of three years. (*See e.g.*, A.R. 362, 391, 406, 410, 450, 513.) Throughout this period, plaintiff was prescribed a variety of medications and devices, including, *inter alia*, "crutches as needed" (A.R. 277), orthopedic therapy (A.R. 294), and a "walker boot" (A.R. 319). Further, the ALJ does not specify a course of treatment that would be appropriate for symptoms of fibromyalgia. Moreover, the record indicates that plaintiff did seek treatment for fibromyalgia through physical therapy in 2006. (A.R. 840.) Therefore, the ALJ's second ground is not clear and convincing.

The ALJ's third ground for discrediting plaintiff is not clear and convincing, because contrary to the ALJ's contention, plaintiff has been taking significant medications, including Vicodin, for a continuous period of more than 12 months to treat her pain. (*See, e.g.,* A.R. 251, 361, 725, 753, 757, 785, 791, 806.) While it is true, as the ALJ notes, that plaintiff was taking Ibuprofen in January 2008, to treat her pain, the ALJ fails to explain that her treating physicians were trying "to wean her from the narcotics." (A.R. 480, 595.) Later treatment notes indicate, however, that plaintiff was prescribed, among other things, Norco, a narcotic pain medication, to treat her pain. (*See, e.g.*, A.R. 871.) Accordingly, the ALJ's third ground does not constitute a clear and convincing reason for discrediting plaintiff.

Neither the ALJ's fourth nor fifth ground for discrediting plaintiff constitutes a clear and convincing basis upon which to reject plaintiff's subjective pain testimony. The ALJ states that "[plaintiff] did not allege an inability to provide her own care," and implies that,

10

because plaintiff "testified she is on the computer a lot, watches a lot of television, is able to cook, and goes to the market with her mother," she is therefore able to work a full-time job. The ALJ fails to demonstrate how plaintiff's performance of basic self-care activities and light household chores translates into the ability to engage in full-time work.[6] *See* <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis); <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989)("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a works setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). Therefore, the ALJ's fourth and fifth reasons are not clear and convincing reasons, as required, for finding plaintiff to be not credible.

    Significantly, the ALJ fails to mention in his rejection of plaintiff's testimony that she suffers from fibromyalgia, which he acknowledges to be a severe disorder. (A.R. 22.) Fibromyalgia is not well-understood and is difficult to diagnose. *See* <u>Jordan v. Northrop</u>

---

[6] Moreover, the ALJ mischaracterizes plaintiff's testimony in listing the activities that plaintiff is able to do. (A.R. 27.) Both plaintiff's computer use and television watching necessitate no standing. Plaintiff testified that she elevates and ices her leg during the day, while she is "just sitting on the couch watching TV . . . due to [her] pain level." (A.R. 56.) Plaintiff testified that "at times I do try to get up and cook. But I never can finish it because I just tired." (A.R. 56.) Plaintiff also testified that when she goes to the market, she uses "one of the little carts." (A.R. 58.)

Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004)(noting that "fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective")(overruled on other grounds in Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (2006)); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)(describing fibromyalgia as "a common, but elusive and mysterious disease"). Because of the nature of fibromyalgia, its diagnosis necessarily hinges on a claimant's subjective symptoms; "there are no laboratory tests for the presence or severity of fibromyalgia." Jordan, 370 F.3d at 872; see also Sarchet, 78 F.3d at 306.

Plaintiff states that she has suffered from fibromyalgia since 1999. (A.R. 252.) The ALJ lists fibromyalgia as one of plaintiff's severe impairments, but does not address her fibromyalgia in any other portion of his opinion. However, two of plaintiff's doctors believe that her fibromyalgia has worsened since 2006. In 2008, Dr. Tony Cho, M.D., plaintiff's treating physician since 1999, stated that "[plaintiff] has fibromyalgia very bad . . . as I see her today . . . she can't even move or put one foot in front of the other[;] I feel that she has recently gotten worse form [sic] her illnesses." (A.R. 804.) Similarly, in 2008, Dr. Michael Sukay, M.D., another of plaintiff's treating physicians, stated that he believed "most of [plaintiff's] . . . musculoskeletal issues are related to the fibromyalgia." (A.R. 933.) While the ALJ discusses Dr. Cho's opinion, stating that "it is conclusory and is not supported by the totality of the medical evidence of record, as well as his own progress notes" (A.R. 27), the ALJ fails to address Dr. Sukay's opinion that plaintiff's fibromyalgia is the true underlying cause of her musculoskeletal issues (A.R. 933).

Significantly, plaintiff's fibromyalgia could support the intensity, persistence, and effects of plaintiff's symptoms. Thus, the ALJ's apparent failure to consider plaintiff's fibromyalgia and its impact on plaintiff's physical impairments constitutes error.

Accordingly, the ALJ's rejection of plaintiff's subjective pain testimony, without setting forth clear and convincing reasons for that rejection, constitutes error. Upon remand, the ALJ should also address plaintiff's fibromyalgia and consider her subjective testimony in determining her ability to work while experiencing fibromyalgia's effects.

**II.  The ALJ Must Reconsider Whether Plaintiff Met or Equaled Listing 1.02A.**

Based on the foregoing, there are matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's conclusion regarding whether plaintiff meets or equals Listing 1.02A may change. Accordingly, the Court does not reach plaintiff's first claim -- *to wit*, that the ALJ erred in evaluating the medical evidence to determine that plaintiff does not meet or equal the impairments set forth in Listing 1.02A. To properly review and reconsider this issue, the ALJ must consider Dr. Sukay's opinion regarding the effect of plaintiff's fibromyalgia on her musculoskeletal issues and, to the extent necessary, develop the record further to resolve any ambiguity surrounding plaintiff's fibromyalgia diagnosis. The ALJ should further clarify to what extent plaintiff relies on crutches, a cane, and her other leg braces to determine whether plaintiff can "ambulate effectively," as

defined in Section 1.00B2b of the Listings.

### III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a proper determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

In this case, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must provide clear and convincing reasons for discrediting plaintiff's subjective pain testimony. Additionally, the ALJ must either address Dr. Sukay's medical opinion, or provide specific and legitimate reasons for rejecting it. Finally, the ALJ should reconsider whether plaintiff meets or equals Listing 1.02A after resolving which, if any, devices plaintiff needs to ambulate and taking plaintiff's fibromyalgia into account more carefully.

///
///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 23, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE